**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARYANN BONOMO, : | |
| : | |
| Plaintiff, : | Civil Action No. 08-0814 (FLW) |
| : | |
| v. : | |
| : | |
| MICHAEL ASTRUE, : | **OPINION** |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| : | |
| Defendant. : | |

**WOLFSON, United States District Judge**:

Maryann Bonomo ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff disability benefits under the Social Security Act ("Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff contends that the record, when considered in full, substantiates her claims and requires a conclusion that she is entitled to disability insurance benefits under sections 216(i) and 223 of the Act. Specifically, Plaintiff maintains that the Administrative Law Judge's (the "ALJ") determination, at Step Five of the sequential process, which found that Plaintiff has the functional capacity to perform substantial gainful activity, is in error. After reviewing the administrative record, this Court finds that the ALJ's decision is indeed based on the substantial evidentiary support required by 42 U.S.C. § 405(g). Therefore, the ALJ's decision is affirmed and Plaintiff's Complaint is dismissed in its entirety.

1

I.  **Procedural History**

Plaintiff first filed an application for disability insurance benefits on February 15, 2005, alleging a disability onset date of August 26, 2004.[1]  Administrative Record ("AR") at 25.  Both the initial application and request for reconsideration were denied.  AR at 52-58.  Subsequently, the Plaintiff requested a hearing before an ALJ, which was held on August 30, 2007.  AR at 266.  In a September 17, 2007 decision, Paula F. Garrety, the ALJ presiding over the matter, issued an unfavorable decision to Plaintiff, denying her claim for benefits because she was found not to be disabled.  AR at 15-23.  Plaintiff subsequently petitioned the Social Security Appeals Council (the "Appeals Council") for review of the ALJ's decision.  AR at 10-11.  However, on December 18, 2007, the Appeals Council denied Plaintiff's petition, making the ALJ's September 17, 2007 decision the final decision of the Commissioner.  AR at 4.

II. **Statement of Facts**

   A.  **Review of Medical Evidence**

Plaintiff asserts that she is disabled because of the following conditions: asthma or asthma connected conditions, anemia, anxiety and learning disabilities.  Based on the foregoing conditions, Plaintiff claims a disability onset date of August 26, 2004.  AR at 15; Plaintiff's Br. ("Pl. Br.") at 6, 10, 13, 14.

Plaintiff first began treatment for asthma in 2002 with Dr. DiPasquale, a pulmonologist.  AR at 162.  Upon examination, Dr. DiPasquale found that within the

---

[1] While the record reflects an onset date of August 26, 2004, and the ALJ properly identified August 26, 2004 as the alleged onset date, Plaintiff inexplicably refers to the onset date as both August 26, 2004 and August 22, 2006 in the briefing to this Court. (Pl. Br. at 3, 6, 17). Because there does not appear to be a dispute that the alleged onset date is August 26, 2004, this Court will presume that any reference by Plaintiff to August 22, 2006 as the alleged onset date was in error.

lungs, there were decreased breath sounds bilaterally, an occasional wheeze and no rhonchi. However, by letter dated September 4, 2002, Dr. DiPasquale informed Plaintiff that he was terminating the doctor-patient relationship based upon Plaintiff's continued disregard of his treatment advice. AR at 180.

Thereafter, on September 18, 2002, Plaintiff became a patient of Dr. Velez. AR at 158. Dr. Velez diagnosed Plaintiff with bronchial asthma, describing her symptoms as paroxysmal wheezing and shortness of breath. However, he noted that the evaluation and diagnosis were somewhat inconclusive. AR at 161. He also noted that objective testing of Plaintiff showed normal pulmonary function. AR at 158. At the time of Plaintiff's first visit to Dr. Velez, she had been taking Advair 500/50 twice per day, Albuterol via nebulizer as needed, Nexium 40 mg once per day and Singulair 10 mg once per day. Dr. Velez tapered all her medications except for the Albuterol via nebulizer and Plaintiff's symptomatology did not worsen during the tapering. AR at 160. According to Dr. Velez's progress notes, Plaintiff's asthma was stable and her chest was clear during the period from September 8, 2004 through May 10, 2006.[2] AR 152-157; Pl. Br. 7-8; Df. Br. 2. Dr. Velez also wrote that Plaintiff's paroxysmal wheezing and shortness of breath responded to a nebulized dose of Albuterol. AR at 158, 160-61. Nevertheless, in January 2005, Dr. Velez expressed his medical opinion that Plaintiff "is permanently disabled and is not expected to return to work in the next year and/or in the foreseeable future." AR at 158.

In connection with her social security disability application, Dr. C.S. Sivadas consultatively examined Plaintiff on July 28, 2005. During the examination, Plaintiff

---

[2] The Court notes that the handwritten progress notes of Dr. Velez are somewhat illegible. Nevertheless, the parties do not dispute that the record reflects that Plaintiff's chest was clear and that her asthma was stable during the time period indicated.

3

experienced a mild episode of wheezing, though the application of the nebulizer with Albuterol solution remedied the situation. AR 127. Dr. Sivadas noted that there seems to be an emotional overlay to Plaintiff's paroxysmal wheezing. Id. Spirometric pulmonary function tests were found to be within the normal range. AR at 126. Dr. Sivadas assessed Plaintiff as having bronchial asthma by history. AR at 127.

On August 24, 2005, Dr. R. Briski, a state agency non-examining physician, reviewed Plaintiff's record and assessed Plaintiff as being capable of the following: lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing/walking approximately six hours in an eight hour day; unlimited pushing and/or pulling; and occasionally climbing ramp or stairs and ladders, ropes and scaffolds. AR at 137, 143. Dr. Briski also found that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, etc. AR at 140. To support these findings, Dr. Briski relied on Dr. Sivadas' findings as well as the lack of recently documented asthma attacks. AR at 137.[3] Dr. Briski further found Plaintiff's allegations of shortness of breath and associated functional limitations to be only partially proportionate in severity to that expected, and partially consistent with the evidence. AR at 141. Dr. Briski opined that "claimant would have some limitations during acute episodes of asthma, but she has no documented attacks, has normal PFTs, and reports some limitations on the Function Report that are not supported by the [medical record] cited above (inability to walk more than five steps/reaching/kneeling)." Id. (parentheses in the original). He further noted that Dr.

---

[3] In order to support his conclusions, Dr. Briski wrote as follows: "43 yo female; diagnoses as above  On the CE: wheezing on auscultation of the lungs; limited lumbar spine flexion; rest of exam essentially WNL  PFTs mildly abnormal no recent documented asthma attacks Function Report: reports limitations in some daily activities due to her MDI; refer to report for details." AR at 137.

4

Velez's statement that Plaintiff is disabled is a determination reserved for the Disability and Determination Services and furthermore, that the medical record does not support Dr. Velez's statement in that regard. AR at 142.

Plaintiff was treated at the Valley Hospital's emergency room on June 7, 2006 for asthma exacerbation. AR at 198. Prior to Plaintiff's arrival at the hospital, she took her prescribed Albuterol. Plaintiff became upset, hyperventilated and developed tingling in the hands and feet.[4] At some point during the visit, Plaintiff reported that she "felt better." The medical record indicates that Plaintiff took Albuterol via nebulizer prior to her arrival at the hospital.

On July 18, 2006, Dr. H. Goldbas, a state agency reviewing physician, analyzed the evidence on record and affirmed Dr. Briski's assessment. AR 143. On the same day, Dr. Michael A. D'Anton, a state agency reviewing psychologist, likewise examined Plaintiff's record and determined that the totality of the medical evidence on record did not indicate a mental impairment. AR at 144. Dr. D'Anton opined that "no further psych development is necessary." Id.

Plaintiff visited an emergency room for the second time on August 20, 2006, for an asthma attack. AR at 235. Plaintiff stated that nervousness, induced by the smell of a sewage plant led to the asthma attack. AR at 208, 239. Plaintiff administered treatment to herself prior to the visit, with no relief. AR at 239, 241. No treatment was given and ultimately Plaintiff was discharged in stable condition, showing an oxygen saturation of ninety-nine percent. AR at 243. Plaintiff was diagnosed with acute asthma exacerbation. AR at 243.

---

[4]   Although it is not entirely clear from the record, it appears that the hyperventilation episode happened prior to Plaintiff's arrival at the hospital emergency room.

On September 1, 2006 and October 11, 2006, Plaintiff was treated at Kaleidoscope Medical Associates. AR at 208-09. With regard to her first examination, Plaintiff was found to have a peak flow of 340 and was diagnosed with asthma uncontrolled. Plaintiff was advised to take her medications.[5] Id. At the second examination, Plaintiff stated that she had two asthma attacks a week prior to the visit. AR at 209. Using the nebulizer twice, the Plaintiff was able to alleviate the attack. Id. Plaintiff was again diagnosed with asthma uncontrolled. Id. The attending physician noted the following: "SSI—temporary disability given for three months." Id.

Plaintiff visited the emergency room for the third time on October 21, 2006. AR at 226. Plaintiff had difficulty breathing after eating potato chips and onion dip and stated that the nebulizer was ineffective. AR at 230. At the hospital, Plaintiff showed no signs of respiratory distress; instead she was hyperventilating upon arrival. Id. An examination showed that Plaintiff's lungs were clear and her oxygen saturation was one hundred percent. Plaintiff was diagnosed with hyperventilation syndrome and was prescribed Ativan, an anti-anxiety medication. AR at 228, 232.

Plaintiff received emergency room treatment for the fourth time on November 21, 2006 because of an asthma attack. AR at 217. At the time of examination, Plaintiff coughed and wheezed but was able to speak in full sentences. AR at 223. Following an hour-long nebulizer treatment, Plaintiff's condition improved, as she "felt better". AR at 224. Her lungs were found to be clear, with only a wheeze noted. The Plaintiff was discharged in stable condition with an oxygen saturation of ninety-five percent and was diagnosed with acute respiratory distress and exacerbation of asthma. AR at 223-25.

---

[5] Plaintiff was prescribed Advair 100/50 and Singulair 10.

In November 2006, Plaintiff began treatment with Dr. Annam, primarily for her asthma. AR at 253. After an initial exam, Plaintiff was found to have clear lungs. AR at 253. On December 12, 2006, Dr. Annam diagnosed Plaintiff with asthma and anemia and noted that she was "clinically feeling better." AR at 254. In January 2007, Plaintiff was again diagnosed with asthma and was "feeling better." AR at 249. Plaintiff visited Dr. Annam in February 2007 and March 2007 and was diagnosed with asthma after both visits. AR at 248-49. On May 4th, Plaintiff did not complain of shortness of breath or cough but was treated for a fungal infection. AR at 248. In June 2007, Plaintiff complained of increased anxiety and was again diagnosed with asthma. AR at 247-48. In both July and August 2007, Plaintiff complained of shortness of breath and was diagnosed with asthma AR at 247. On July 3, 2007, Dr. Annam noted that Plaintiff had a history of anemia. Id.

Dr. Annam completed a Pulmonary Residual Functional Capacity Questionnaire on July 3, 2007 and diagnosed Plaintiff with asthma. AR at 244-46. The symptoms noted by Dr. Annam included shortness of breath, chest tightness, wheezing, episodic acute asthma, fatigue, palpitations and coughing. AR at 244. Precipitating factors for Plaintiff's asthma attacks included upper respiratory infection, allergens, exercise, "emotional upset/stress", irritants, "cold air/change in weather" and foods. Id. Dr. Annam noted that Plaintiff has asthma attacks two to three days per week and is incapacitated for a few hours as a result of each attack. AR at 244. Dr. Annam recommended that Plaintiff avoid all exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents, cleaners and chemicals. Finally, Dr. Annam described Plaintiff as being

incapable of "low stress" jobs because she can suffer from shortness of breath after becoming emotional. AR at 245.

### B. Review of Non-Medical Evidence

Plaintiff was born on April 19, 1962. AR at 25. Plaintiff testified that she has a learning disability and attended special education classes from the third grade through her graduation from high school.[6] AR at 273. Plaintiff worked as a cashier and a deli clerk, however, Plaintiff stopped working in January 2002 as a result of her health issues. AR at 271. Specifically, in December 2001 Plaintiff fell to the ground while at work and thereafter began experiencing wheezing and coughing symptoms. AR at 209. As a result, Plaintiff had difficulty performing her duties as a cashier.[7]

At the time of the August 30, 2007 hearing, Plaintiff was forty-five years old, separated from her husband and had no children. Plaintiff lived with a friend who owned two dogs and a cat. AR at 270. Plaintiff testified that she helped care for the pets by feeding them two or three nights per week and by letting them out of the house. AR at 271.

### C. Vocational Expert's Testimony

---

[6] The ALJ noted that there is no medical evidence on record attesting to Plaintiff's learning disability. Nevertheless, the ALJ gave Plaintiff "the benefit of the doubt", finding that based on Plaintiff's testimony she had a learning disability. AR at 17. Although Dr. Annam's notes are difficult to read, Dr. Annam appears to note Plaintiff's developmental disability and the fact that she attended special education classes. AR at 254. A disability report, on the other hand, indicates that Plaintiff did not attend special education classes. AR at 76.

[7] In response to the ALJ's inquiry as to whether Plaintiff had trouble performing her duties as a cashier, she testified as follows: "When I got sick, yes, I did. I had problems because I'd be right in the middle of waiting on a customer and I would start wheezing and I just couldn't breathe or anything." AR at 275. Furthermore, Plaintiff testified that the scent of perfume or cologne could trigger an asthma attack. AR at 276.

A vocational expert, Richard Bane, testified before the ALJ at Plaintiff's disability hearing. The expert indicated that Plaintiff's past relevant work as a delicatessen clerk was medium, semi-skilled work, while her fast food work activity was light and unskilled. AR at 284. The expert was asked to assume an individual with Plaintiff's age, education and past relevant work and to assume that such an individual had the exertional residual functional capacity to perform light work, low stress in nature, performed in a temperate environment, free of smoke, chemicals, fumes, and dust; to have only limited contact with the public and co-workers; and to be confined to routine, one to two-step tasks. In light of this hypothetical, the expert opined that such individual could not perform Plaintiff's past work, but could perform work at light exertional levels, such as assembler of plastic products, with 400,000 and 1,500 positions existing nationally and locally, respectively, office clerical, with 400,000 and 3,000 positions existing nationally and locally, respectively, or packer, with 300,000 and 1200 positions existing nationally and locally, respectively. AR at 285.

### D. The ALJ's Findings

Based on the Administrative Record, the ALJ concluded that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. The ALJ found that Plaintiff retained the residual capacity to perform light work that "involves only routine, 1-2 step job tasks, low stress in nature and performed in a temperate environment, with no exposure to fumes, smoke, dust and chemicals, and limited contact with the public and co-workers." AR at 19. Finding Plaintiff's functional capacity was inconsistent with her past relevant work, the ALJ determined that Plaintiff could not perform the same, and proceeded to the Fifth Step of the sequential evaluation. AR at 22. Considering

Plaintiff's age, education, work experience and residual functional capacity, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in the national economy.  AR at 23.

### III. Discussion

#### A. Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings have support by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's

decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

### B.     Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 US.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5, 107 S.Ct. 2287 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he/she is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work

11

activities. 20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to benefits. See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work ("PRW"). 20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141. If the claimant is

able to perform her previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

There is no dispute that Plaintiff has met her burden of proof at Steps One through Four of the sequential process. Specifically, Plaintiff was not engaged in any form of substantial gainful activity since the onset of her alleged disability (Step One); Plaintiff's medical records demonstrate a combination of severe medical ailments that significantly preclude her from engaging in basic work functions (Step Two); Plaintiff's severity of impairments do not meet those listed on the Impairment List as described by the Act (Step Three), and Plaintiff did not retain the functional capacity to return to her past relevent work (Step Four). As previously noted, however, the ALJ made a determination at Step Five that the Plaintiff retained functional capacity to perform a series of positions available in the national economy. It is the ALJ's determination at Step Five that Plaintiff challenges in the instant appeal.

### C.     Plaintiff's Claims on Appeal

On this appeal, Plaintiff's arguments focus primarily on the ALJ's rejection of Dr. Annam's opinion in favor of Dr. Briski, the non-examining state agency medical consultant. Plaintiff contends that the ALJ improperly rejected Dr. Annam's finding that Plaintiff suffers from disabling limitations and instead relied erroneously on the opinion of Dr. Briski. Plaintiff asserts that Dr. Annam's findings must be accorded great weight first, because, according to Plaintiff, his findings are supported by the medical record, and second, because, unlike Dr. Briski, Dr. Annam was a treating physician. Plaintiff contends that as the treating doctor, who obtained a full medical history and examined Plaintiff at least eight times over the course of seven months, Dr. Annam's opinion was entitled to great weight. Plaintiff argues that Dr. Annam's opinion is supported not only by his findings, but is also consistent with the record in that it is supported by three other treating sources. The Court finds no reversible error in the ALJ's decision not to afford controlling weight to Dr. Annam's conclusions.

"An ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." Masher v. Astrue, No. 08-4850, 2009 WL 4573907 at * 4 (3d Cir. Dec. 7, 2009) (quoting Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008)). "Although the treating physician's opinion is generally given controlling weight, that opinion is entitled to controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Bonanno v. Comm'r of Soc. Sec., No. 08-1709, 2009 WL 82694, at * 2 (3d Cir. Jan. 14, 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ acknowledged that Plaintiff had been treated by Dr. Annam since November 30, 2006 for monthly visits "mostly for medication maintenance." AR 21. The ALJ concluded, however, that Plaintiff's allegations that she experiences up to four asthma attacks weekly and suffers from chronic fatigue were not reflected in Dr. Annam's progress notes, "which show routine care for anemia, anxiety, and 'on and off' shortness of breath." Id.   Moreover, the ALJ noted that "[o]n several occasions (December 2006 and January 2007), the claimant reported improvement with her medication." Id.  The ALJ's refusal to give significant weight to Dr. Annam's medical opinion that Plaintiff was incapable of performing even low stress jobs was based upon the ALJ's determination that DR. Annam's medical opinion "appears to be based on [Plaintff's] self-reported limitations and not on his treatment notes or the balance of the medical evidence." Id.

The ALJ relied on tangible, objective medical evidence in deciding not to afford great weight to Dr. Annam's recommendations.  The ALJ cited the "balance of the medical evidence" as a factor for supporting the decision. Review of the administrative record reveals that repeated pulmonary function tests administered by Dr. Velez showed normal results.  In fact, Dr. Velez stated that Plaintiff's pulmonary function was normal, even after tapering her medications.  As to Dr. Annam's instruction to Plaintiff to avoid exposure to <u>all</u> environmental irritants, substantial evidence exists to justify the ALJ's rejection of that opinion.  While it is notable that Plaintiff claims she minimizes her exposure to respiratory irritants, the ALJ found substantial evidence to question Dr. Annam's recommendation that Plaintiff cannot work because she should avoid <u>all</u> irritants.  First, the Plaintiff testified that she frequently cares for and feeds the pets that

15

reside within the house she shares with her friend. AR at 271. Second, Plaintiff has been taken out for haircuts, prepares her own meals, washes laundry and shops for groceries. AR at 106. Thus, the severity of Dr. Annam's recommendations were called into question by the Plaintiff's own actions. Taken together, the ALJ found sufficiently substantial evidence to deny controlling weight to Dr. Annam's medical opinion.

Plaintiff also argues that the ALJ erred by adopting Dr. Briski's opinion over Dr. Annam's. As previously noted, however, the ALJ found substantial evidence to question Dr. Annam's opinion. Nevertheless, Plaintiff contends that the ALJ's reliance on Dr. Briski's opinion was in error because Dr. Briski rendered his decision, in part, because there were no recent documented asthma attacks. Plaintiff contends that had Dr. Briski had the opportunity to review Dr. Annam's progress notes, the 2006 Kaleidoscope Medical Associates records and the records from Plaintiff's four emergency room visits, all of which were documented after Dr. Briski rendered his opinion, Dr. Briski would have found Plaintiff's asthma more limiting. Plaintiff's presumption that had Dr. Briski reviewed the foregoing records, which were unavailable to him at the time of his evaluation, he would have found Plaintiff's asthma far more limiting is undermined by the fact that Plaintiff, after each ER visit, was consistently discharged in stable condition, never suffered from low oxygen levels, and responded favorably to her Albuterol medication. Moreover, Plaintiff's presumption ignores that Dr. Briski reviewed the entire record available to him at the time and relied on factors other than the lack of recently documented asthma attacks in making his determination. AR at 137. Moreover, that determination was affirmed by Dr. Goldbas in July 2006. Most importantly, the ALJ

16

had the entire record before her, and explicitly acknowledged the evidence that Dr. Briski was unable to analyze, including the four emergency room visits.

Plaintiff next argues that the ALJ erred in rejecting the opinion of Kaleidoscope Medical Associates, which diagnosed Plaintiff with "uncontrolled" asthma. The ALJ based her determination on medical evidence which showed that Plaintiff's asthma and wheezing responded favorably to medication. To counter the ALJ's reasoning, Plaintiff cites the four emergency room visits as evidence that Plaintiff does not respond favorably to medication. While the emergency room visits may indeed offer some evidence in favor of Plaintiff's position, the Court finds no error in the ALJ's determination that the record as a whole did not support a finding that Plaintiff did not respond favorably to medication. Indeed, Dr. Velez noted that Plaintiff's paroxysmal wheezing responds to Albuterol via nebulizer and that Plaintiff remained "somewhat functional" directly as a result of the Albuterol via nebulizer. Kaleidoscope Medical Associates also noted that a repeated use of the Alubterol via nebulizer made Plaintiff feel better. Furthermore, at the first and fourth visit to the emergency room, Plaintiff reported that her condition improved following Albuterol treatments. Accordingly, the Court finds that substantial evidence in the record to support the ALJ's determination to reject Kaleidoscope Medical Associates' diagnosis.

Plaintiff also contends that the ALJ's failure to explain her adoption of Dr. Briski's opinion is contrary to Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981), which establishes that "the ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits. The ALJ's decision must be in writing and contain findings of fact and a statement of reasons in support

17

thereof." Cotter, 642 F.2d at 704. According to Plaintiff, "the ALJ never stated what evidence in the record he relied on when he adopted Dr. Briski's opinion. Instead, after reviewing the evidence, the ALJ made a conclusory finding that Dr. Briski's opinion 'was fully supported by, and consistent with the medical evidence.'" Reply Br. at 5 (quoting AR 22). Contrary to Plaintiff's assertion, the ALJ indeed discussed the conflicting medical evidence and testimony and used the information and evidence presented to support her conclusions. The Court finds that the ALJ's comprehensive review satisfied the requirements of Cotter.

The Court now turns to Plaintiff's contention that the ALJ erred in rejecting Dr. Annam's finding that Plaintiff is incapable of even "low stress" jobs. Dr. Annam based his conclusion on the following: "patient gets emotional and becomes shortness [sic] of breath." AR at 245. This conclusion appears to be substantiated only by the Plaintiff's own statements. For instance, Dr. Annam did not witness any such emotionally induced episode while treating the Plaintiff. Furthermore, Dr. Annam did not recommend that Plaintiff seek any mental health treatment for her anxiety/emotional overlay, nor is there any indication in the record that Plaintiff sought such treatment. In fact, Dr. D'Anton, the state agency reviewing psychologist, concluded that the medical record did not point to any mental impairment at all. AR at 144.

Plaintiff disputes the ALJ's finding that Dr. Annam's determination is based solely on Plaintiff's self reported limitations, arguing instead that "they are in fact well supported by the balance of the medical evidence." Pl. Br. at 34. Plaintiff points to the 2006 emergency room visit which resulted from nervousness and smells, which purportedly triggered her asthma attack, the emergency room visits precipitated by

Plaintiff's hyperventilation, and other notations in the record wherein it is stated that there is an emotional overlay to Plaintiff's paroxysmal wheezing. The ALJ considered the foregoing evidence, however, noting that while there may indeed be "some emotional component (anxiety) to [Plaintiff's] episodic wheezing, [Plaintiff's] mental condition has not warranted any treatment with a mental health professional or required psychiatric hospitalization or therapy. There is no ongoing panic attacks, agoraphobia, or decompensations." AR at 21. Here, the ALJ adequately inquired into whether the "emotional component" to Plaintiff's episodic wheezing supported Dr. Annam's finding that Plaintiff could not perform even a low stress job and rejected such finding. The Court finds no error in the ALJ's determination. The Court likewise rejects Plaintiff's contention that the ALJ's residual functioning capacity assessment is violative of Social Security Ruling 96-8p in that the ALJ failed to include a narrative discussion in connection with the finding that Plaintiff can do low stress work. Indeed, review of the ALJ's decision demonstrates that the ALJ considered all of the relevant evidence and provided a rationale as to the residual functioning capacity finding during the relevant period.

In light of this Court's finding that the evidence was sufficient to support the ALJ's decision, this Court need not address Plaintiff's alternative argument that this Court should remand the matter to permit the ALJ to arrange for a consultative examination. See Facyson v. Barnhart, 94 Fed.Appx. 110, 113, n.5 (3d Cir. 2004) (noting that where "evidence taken together sufficed for the ALJ to make an informed decision, Commissioner was not obligated to seek further consultations, evaluations or records.")

### IV. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.

Dated: December 30, 2009

                                              /s/   Freda L. Wolfson
                                            **United States District Judge**